**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) Plaintiff, ) | Case No. 2:09-cr-00017-PMP-PAL |
| ) | **REPORT OF FINDINGS AND RECOMMENDATION** |
| vs. ) | |
| DAVID ESCOBAR-MENJIVAR, ) | (Mtn to Dismiss - Dkt. #23) |
| ) Defendant. ) | |

Before the court is defendant David Escobar-Menjivar's ("Escobar") Motion to Dismiss Based on Prior Unlawful Deportations (Dkt. #23) filed July 13, 2009 which was referred to the undersigned for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. The court has considered the Motion, the government's Response (Dkt. #24), the exhibits attached to the government's Notice of Manual Filing (Dkt. #25), and Escobar's Reply (Dkt. #26).

**BACKGROUND**

Escobar is charged in a criminal Indictment (Dkt. #1) returned January 21, 2009 with one count of Unlawful Reentry of a Deported Alien in violation of 8 U.S.C. § 1326. The indictment charges that Escobar was deported and removed from the United States on or about April 14, 2004, and on or about January 12, 2009, he returned and was found in the United States, having unlawfully reentered and remained without the express consent of the Attorney General or his successor, the Secretary for Homeland Security, under 6 U.S.C. §§ 202(3) & (4) and 6 U.S.C. § 557. In the current motion, Escobar challenges the lawfulness of the underlying Removal Order.

On October 14, 2003, Escobar was indicted on one count of Felony Statutory Sexual Seduction in violation of Nevada Revised Statutes ("N.R.S.") §§ 200.364 and 200.368. On January 26, 2004, Escobar was convicted of the offense and sentenced to a maximum of forty-eight months with a

minimum parole eligibility of twelve months, suspended, and three months probation.  On January 28, 2004, Immigration and Customs Enforcement issued a Notice to Appear for Escobar, alleging that: (1) he was not a citizen or national of the United States; (2) he was a native and citizen of El Salvador; (3) he entered the United States at or near El Paso, Texas in or about August, 1999; (4) at that time he was not admitted or paroled after inspection by an Immigration Officer; (5) he was convicted on January 26, 2004 in Nevada for Felony Statutory Sexual Seduction in violation of N.R.S. § 200.368; and (6) for that offense he was sentenced to a period of confinement for a maximum of maximum of forty-eight months with a minimum parole eligibility of twelve months, suspended, and three months probation.  See Exhibit A to Motion.  The conviction was alleged to be grounds for removal pursuant to section 212(a)(2)(A)(i)(i) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1182(a)(2)(A)(i)(i) as a crime involving moral turpitude.  Id.  Escobar was personally served with this Notice to Appear in Las Vegas, Nevada on January 29, 2004.  Id.

At a hearing before the Immigration Judge on March 4, 2004, Escobar admitted the allegations and charges in the Notice of Intent, stating he was deportable and acknowledging that he was not eligible for any form of relief from removal.  See Transcript, attached as Exhibit C to Motion at 4-5. He waived his right to rebut or otherwise contest the charges contained in the Notice of Intent, and he requested to be removed to El Salvador.  Id. at 11-17.  Escobar was physically removed to El Salvador pursuant to a Warrant of Removal/Deportation on April 24, 2004.  See Motion at 3:1-2.

**The Parties' Positions**

Escobar argues that he was unlawfully removed to El Salvador on April 14, 2004 because there were "serious defects [that] foreclosed proper judicial review of the administrative removal proceeding."  Motion at 2:14-15.  Specifically, Escobar argues that he was eligible for fast-track voluntary departure pursuant to 8 U.S.C. § 1229c(a), and the immigration judge failed to inform Escobar of his eligibility for relief from removal.  Escobar also asserts his conviction in Nevada state court did not qualify him as an aggravated felon.  He states that he was eligible for a waiver of removal under 8 U.S.C. § 1182(h).  At the time of his removal proceeding, there was a waiver available for those charged with having committed a crime of moral turpitude in the case of an immigrant who is the parent, spouse, son, or daughter of an American citizen, and it is established that removal would "result

2

in extreme hardship" to the American citizen or lawful resident. The immigration judge did not inquire about Escobar's family in the United States. Had he done so, he would have learned that Escobar is the father of an infant son who is an American citizen. By failing to advise him of available relief, Escobar's right to due process was violated. Moreover, his waiver of rights was invalid because the immigration judge did not specifically address availability of relief from removal with Escobar or verify that Escobar's decision to waive his rights was considered and intelligent. Lastly, Escobar asserts that he was exempted from the requirement to exhaust his administrative remedies because he was not advised of the available relief from removal.

In response, the government asserts that the Motion to Dismiss should be denied because Escobar's conviction for statutory sexual seduction qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(A). As a result, Escobar was barred from the discretionary relief of voluntary departure under 8 U.S.C. § 1229c(a)(1). The fact that the conviction is not alleged as an aggravated felony in the Notice to Appear did not preclude it from being used to disqualify Escobar from relief from removal or deprive him of his due process rights. Additionally, Escobar was ineligible for voluntary departure under 8 U.S.C. § 1229c(c) because he received voluntary departure in 1999. Thus, the government argues Escobar was not prejudiced by any alleged due process violation because he was not eligible for the discretionary relief of voluntary departure. The government also argues Escobar was not eligible for discretionary relief under section 1182(h), more commonly referred to as a section 212(h) waiver, because he could not plausibly claim that his removal would cause extreme hardship to a qualifying relative or child. The government points out that the infant son referred to in Escobar's moving papers is the son who was born as a result of the sexual relations between Escobar and the minor victim in the state prosecution. The government states that at the time Escobar was sentenced, his four month old son was living with his mother and her family. The government claims Escobar and the victim were never married, and Escobar was not supporting the child physically, emotionally, or financially because he was incarcerated.

In reply, Escobar asserts that applying the categorical analysis outlined in Taylor v. United States, 495 U.S. 575, 600 (1990), his conviction does not qualify as an aggravated felony. Because Nevada's statute criminalizes more conduct than the federal statute, it is categorically overbroad. He

also argues that the government has not presented any judicially noticeable document to show that Escobar's actual conviction qualifies as an aggravated felony under the modified categorical approach. As a result, Escobar argues that the immigration judge should have told Escobar he was eligible for voluntary departure. Based on information contained in the Pre-Sentence Report attached as Exhibit 6 to the government's Response, Escobar asserts he had plausible grounds for a section 212(h) waiver because prior to his incarceration, he was continually employed and provided financial support to the victim and his infant son. Escobar states that his support was particularly important because of the victim's "tumultuous relationship" with her own family.

## DISCUSSION

**A.     The Legal Standard for Collateral Attack of a Prior Deportation Order**

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), changed the terminology of the Immigration and Nationality Act ("INA"). Before IIRIRA, aliens who committed aggravated felonies were placed in *deportation* proceedings after being served with an order to show cause. Ram v. INS, 243 F.3d 510, 513 (9th Cir. 2001). After IIRIRA, aliens are placed in *removal* proceedings after being served with a notice to appear. The cases frequently use the terms deportation and removal interchangeably. 8 U.S.C. § 1326(a) makes it a crime for an alien to enter, attempt to enter, or to be found within the United States without consent of the Attorney General after being denied admission, excluded, deported, or removed.

A defendant may collaterally attack a prior deportation or removal to preclude the government from relying on the deportation in a prosecution under section 1326. Such collateral attacks of underlying deportations or removals rely on the Supreme Court's decision in United States v. Mendoza-Lopez, which held that the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation. 481 U.S. at 838-39; see also United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000). After the Supreme Court's holding in Mendoza-Lopez, Congress codified when underlying deportations would be subject to such attacks in 8 U.S.C. § 1326(d). This section reiterates the Court's holding in Mendoza-Lopez, but it also adds an administrative exhaustion requirement. Pursuant to section 1326(d), an alien may not collaterally attack an underlying deportation proceeding unless he demonstrates that: (1) he exhausted his administrative

remedies to seek relief against the deportation order; (2) the deportation proceeding improperly deprived him of the opportunity for judicial review; and (3) the order was fundamentally unfair. The Ninth Circuit has held that a defendant must demonstrate that his due process rights were violated by defects in his underlying deportation proceeding, and that he suffered prejudice as a result of the violation. United States v. Proa-Tovar, 975 F.2d 592, 594-95 (9th Cir. 1992) (en banc); Arrieta, 224 F.3d at 1079.

"In a criminal proceeding, an alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order." Id. (citing United States v. Estrada-Torres, 179 F.3d 776, 780-81 (9th Cir. 1999)), cert. denied, 531 U.S. 864 (2000), overruled on other grounds by, United States v. Rivera-Sanchez, 247 F.3d 905 (9th Cir. 2001)). The exhaustion requirement in section 1326(d) cannot bar collateral review of a deportation proceeding unless the waiver of the right to administrative appeal comports with due process. United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001). A waiver of appeal is valid and comports with due process when it is both "considered and intelligent." Arrieta, 224 F.3d at 1079. "Such a waiver is not 'considered and intelligent' when 'the record contains an inference that the petitioner is eligible for relief from deportation,' but is not "advise[d] . . . of this possibility and give[n] . . . the opportunity to develop the issue.'" Muro-Inclan, 249 F.3d at 1182 (quoting Arrieta, 224 F.3d at 1079 (internal quotation omitted)). If the waiver is not considered and intelligent, the deportee is deprived of judicial review in violation of due process. United States v. Lopez-Vasquez, 1 F.3d 751, 753-54 (9th Cir. 1993) (per curiam). The government bears the burden of proving the waiver. Id.

When a defendant moves to dismiss an indictment under § 1326 based on a violation of due process in the underlying removal proceeding, he must also show that prejudice resulted from the violation of his due process rights. Muro-Inclan, 249 F.3d at 1184. "To establish prejudice, petitioner does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." Id. (citation and internal quotation omitted).

**B.     Notice to Appear**

The Notice to Appear, attached as Exhibit A to the Motion to Dismiss, charged that Escobar was convicted of statutory sexual seduction in violation of N.R.S. 200.364, 200.368 – a crime which

constitutes the essential elements of a crime involving moral turpitude. The government's Response, however, does not claim that Escobar's conviction is a crime involving moral turpitude for immigration purposes. Rather, his crime qualifies as an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii) as that term is defined by § 1101(a)(43)(A). That provision defines "aggravated felony" as "murder, rape, or sexual abuse of a minor." Although each is an independent basis to remove an illegal alien, the fact that Escobar's crime was categorized as a crime of moral turpitude rather than as an aggravated felony in the Notice to Appear does not violate his due process rights. In Salviejo-Fernandez v. Gonzalez, the Ninth Circuit joined the Second and Fifth Circuits holding that "due process does not require inclusion of the charges in the NTA [Notice to Appear] that are not grounds for removal but are grounds for denial of relief from removal." 455 F.3d 1063, 1066 (9th Cir. 2006). The Ninth Circuit found that an alien's due process rights are satisfied where the Notice to Appear contains: (a) the nature of the proceedings against the alien; (b) the legal authority under which the proceedings are conducted; and (c) the acts or conduct alleged to be in violation of the law; and (d) the charges against the alien and the statutory provisions alleged to have been violated. Id.

Here, Escobar was apprised of all four requirements in the Notice to Appear–namely, that removal proceedings were being instituted against him pursuant to section 212(a)(2)(A)(i)(i) of the Immigration and Nationality Act; that he had been convicted of violating N.R.S. 200.364, 200.368 by engaging in statutory sexual seduction. Thus, although the government is now asserting he was ineligible for relief from departure because his conviction qualifies as an aggravated felony, his due process rights were not violated because removal proceeding were initially instituted against him for the same crime asserted to involve moral turpitude.

**C.     Qualification as Aggravated Felony**

The primary question for the court to address is whether Escobar's conviction for statutory sexual seduction under N.R.S. 200.364, 200.368 qualifies as an aggravated felony for immigration purposes. If it does, Escobar was not eligible for relief from removal through voluntary departure under section 1229(c)(A)(2), or discretionary waiver of removal under section 212(h), and there was no due process violation.

/ / /

### 1. **The Categorical Approach**

To determine whether a conviction under N.R.S. 200.364, 200.368 constitutes sexual abuse of a minor within the meaning of 8 U.S.C. § 1101(a)(43)(A), the court must first apply the "categorical approach" set forth in Taylor v. United States, 495 U.S. 575 (1990). The categorical approach requires the court to "make a categorical comparison of the statute of conviction to the generic definition [of the crime] and decide whether the conduct proscribed [by the statute] is broader than, and so does not fall within, this generic definition." Estrada-Espinoza v. Mukasey, 546 F.3d 1147, 1152 (9th Cir. 2008). In applying the categorical approach, the court does not look at the particular facts underlying the offense but instead looks "only to the fact of conviction and the statutory definition of the prior offense." Id. (citing Taylor, 495 U.S. at 602).

To determine whether a conviction pursuant to a state statute qualifies as an aggravated felony, courts are instructed to make a categoric comparison of the elements of the statute of conviction to determine whether the conduct proscribed by the statute is broader than the generic definition. Chang v. INS, 307 F.3d 1185, 1189 (9th Cir. 2000). "In the absence of specific congressional guidance as to the elements of a crime, courts have been left to determine the 'generic sense in which the term is now used in the criminal codes of most States.'" Estrada-Espinoza at 1152 (citing Taylor, 495 U.S. at 598). It is not necessary to examine the generic definition of "statutory sexual seduction" in the criminal codes of most states because the Ninth Circuit has held that "Congress has enumerated the elements of the offense of 'sexual abuse of a minor' at 18 U.S.C. § 2243." Id. That section enumerates the elements of the offense of sexual abuse of a minor as: (a) a mens rea level of knowingly; (b) a sexual act; (c) with a minor between the ages of twelve and sixteen; and (d) an age difference of at least 4 years between the defendant and the minor. Id. If the elements of N.R.S. 200.364 satisfy all four generic elements of the offense of sexual abuse of a minor, it is categorically an aggravated felony.

Escobar argues that N.R.S. 200.364 is too broad to categorically qualify as an aggravated felony because it punishes conduct not punished under the federal statute. Specifically, Nevada's statute criminalizes sexual conduct where there is a three-year age difference between a defendant and victim, and the federal statute requires there be at least a four-year age difference. Therefore, Escobar argues

///

1  his conviction for statutory sexual seduction under Nevada statute does not categorically qualify as an
2  aggravated felony.
3      Escobar pled guilty to a violation of N.R.S. 200.364, which provides in pertinent part:
4      "Statutory sexual seduction" means:
       (a) Ordinary sexual intercourse, anal intercourse, cunnilingus or fellatio
5      committed by a person 18 years of age or older with a person under the age
       of 16 years; or
6      (b) Any other sexual penetration committed by a person 18 years of age or
       older with a person under the age of 16 years with the intent of arousing,
7      appealing to, or gratifying the lust or passions or sexual desires of either of
       the persons.
8  Id.
9      N.R.S. 200.368 establishes the penalties for a conviction and provides, in relevant part:
10     [A] person who commits statutory sexual seduction shall be punished:
       1. If he is 21 years of age or older, for a category C felony.
11     2. If he is under the age of 21 years, for a gross misdemeanor.
12 Id.
13     A categoric comparison of the elements of N.R.S. 200.364 with the elements of § 2243
14 demonstrates that the conduct proscribed by N.R.S. 200.364 is broader than Congress' generic
15 definition in § 2243.  The state statute penalizes sexual offenses where the age difference between the
16 offender and minor is less than four years.  The Nevada statute is clearly broader that the federal statute,
17 and Escobar's conviction under N.R.S. 200.364, 200.368 does not categorically qualify as an
18 aggravated felony for immigration purposes.
19     **2.    The Modified Categorical Approach**
20     Because the state statute is categorically overbroad, the court must apply the modified
21 categorical approach to determine whether Escobar's conduct qualifies as an aggravated felony within
22 the meaning of 8 U.S.C. § 1101(a)(43)(A).  The government has attached documents on Escobar's state
23 court conviction to support its position the conduct he pled guilty to qualifies as an aggravated felony.
24 When a statute of conviction is too broad to categorically qualify as an aggravated felony, courts
25 applying the modified categorical approach examine judicially noticeable documents to determine
26 whether the conduct for which a defendant was convicted fits within the federal definition of an
27 aggravated felony.  United States v. Franklin, 235 F.3d 1165, 1167 (9th Cir. 2000); Shepard v. United
28 States, 544 U.S. 13, 18-19 (2005) (it is proper in applying the modified categorical approach to examine

the charging document, terms of any plea agreement, transcript of a plea colloquy, between the judge and the defendant in which the factual basis for the plea was confirmed or some comparable judicial record of this information); United States v. Snellenberger, 548 F.3d 699, 702 (clerk's minute orders may also be considered in applying the modified categorical approach).

Applying the modified categorical approach, the court finds Escobar pled guilty to an aggravated felony. The government has attached the Indictment, a Minute Order from the District Court of Clark County, and an Order for Revocation of Probation and Amended Judgment of Conviction to show that Escobar pled guilty to the charge of sexual seduction of a minor more than four years younger than him and under the age of sixteen. The Indictment to which Garcia pled guilty provides in pertinent part:

> DAVID ESCOBAR. . . accused by the Clark County Grand Jury of the crime(s) of STATUTORY SEXUAL SEDUCTION (Felony-N.R.S. 200.364, 200.368), committed at and within the County of Clark, State of Nevada, on or between September 1, 2002 and December 14, 2002, as follows:
>
> Count 1 [through Count 10]
>
> did, then and there willfully, unlawfully, and feloniously subject LAURA RIVERA, a female person under the age of sixteen years, to sexual penetration, to-wit: sexual intercourse, by placing his penis into the genital opening of the said LAURA RIVERA, the defendant being 21 years of age or older, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of said defendant or said child.

Attachment 1 to Government's Notice of Manual Filing, 00001-00005.

The Indictment contains only the elements of the crime the state set out to prove and does not establish the elements of the offense to which Escobar actually pled guilty. See United States v. Velasco-Medina, 305 F.3d 839, 852 (9th Cir. 2002). The charging document alone clearly cannot support a finding that Escobar's conviction was an aggravated felony. Id. Rather, the government must prove that Escobar admitted all of the elements of an aggravated felony in pleading guilty. Id. In Velasco-Medina, the Ninth Circuit upheld the district court, finding that a state conviction qualified as an aggravated felony where the charging document fit the generic definition of an aggravated felony, and an Abstract of Judgment reflected the defendant pled guilty to an offense which contained all of the elements. 305 F.3d at 852. The Ninth Circuit held that by pleading guilty, the defendant admitted all of the facts alleged in the charging document. Id.; see also United States v. Broce, 488 U.S. 563, 570

(1988) (a plea of guilty is an admission that the defendant...committed the crime charged against him) (internal citation omitted); <u>United States v. Harris</u>, 108 F.3d 1107, 1109 (9th Cir. 1997) (holding a guilty plea conclusively proves the factual allegations contained in the charging document).

The government also attached an Order for Revocation of Probation and Amended Judgment of Conviction (Attachment 2 to Notice at 00007-00008).  By pleading guilty to the Category C Felony offense of statutory sexual seduction, Escobar admitted that he wilfully, unlawfully, and feloniously engaged in a sexual act with a minor under the age of sixteen when he was twenty-one years of age or older – an age difference of at least six years.  Thus, the conduct that Escobar pled guilty to is conduct that satisfies the generic elements of sexual abuse of a minor as that term is defined by 18 U.S.C. § 2243.  His conviction, therefore, qualifies as an aggravated felony for immigration purposes.

## CONCLUSION

Applying the modified categorical approach, the court finds that Escobar was charged with, and pled guilty to, statutory sexual seduction in violation of N.R.S. § 200.364, 200.368.  His conviction qualifies as an "aggravated felony" for purposes of § 1101(a)(43)(A).   As an aggravated felon he was ineligible for relief from removal through voluntary departure under § 1229(c)(A)(2), or discretionary waiver of removal under § 212(h).  Therefore, his due process rights were not violated.

For all of the foregoing reasons,

**IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that Escobar's Motion to Dismiss Based on a Prior Unlawful Deportation (Dkt. #23) be **DENIED.**

Dated this 20th day of August, 2009.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE